IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CENTRAL MUTUAL INSURANCE COMPANY, | § § § | |
| *Plaintiff,* | § § § | 5-24-CV-00258-FB-RBF |
| vs. | § § § | |
| JASON HOLDINGS, LLC,  JASON CONTRACTING & REPAIR, LLC, DANIEL MCCURTAIN, | § § § § | |
| *Defendants.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Biery:**

This Report and Recommendation concerns Plaintiff Central Mutual Insurance Company's (Central Mutual) Motion for Summary Judgment and Defendant Daniel McCurtain's Cross-Motion for Summary Judgment. *See* Dkt. Nos. 34 & 49. The District Judge referred all pretrial matters in this action for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 12. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, Central Mutual's Motion for Summary Judgment, Dkt. No. 34, should be **DENIED**, and McCurtain's Cross-Motion for Summary Judgment, Dkt. No. 49, should be **GRANTED**.

**Factual and Procedural Background**

This is an insurance dispute that spawned out of an underlying lawsuit in the 57th Judicial District Court of Bexar County, Texas, styled as *Daniel McCurtain v. Lone Star*

*BuildBlock, LLC*, Cause No. 2021CI22034. Dkt. No. 22 at 4; *see also* Dkt. No. 34-3. The live pleading in that lawsuit at the time the parties filed their present motions for summary judgment was the Fourth Amended Original Petition and Request for Declaratory Relief, which named Jason Holdings, LLC, Jason Contracting & Repair, LLC (collectively, "Jason Defendants"), and Lone Star BuildBlock, LLC, as defendants. Dkt. No. 34 at 1; *see also* Dkt. No. 34-3 at 2-3. In that underlying state court action, Daniel McCurtain—who is a defendant in this federal action— alleged as the plaintiff that he (McCurtain) contracted for construction work with Lone Star, not knowing at the time that the work actually would be performed by Jason Contracting. *See* Dkt. No. 34-3 at 3-4. The underlying action alleges that both entities, Jason Contracting and Lone Star, are the wholly owned subsidiaries of Jason Holdings. *Id*. The work contemplated involved the construction of "a turnkey stem wall foundation of Insulated Concrete Forms (ICF) for a home [McCurtain] was building." *Id*. at 3.

McCurtain alleged in the underlying action that the work "contractually agreed to by Lone Star and actually performed by Jason Holdings is materially defective in numerous respects." *Id*. at 4. According to Central Mutual's live complaint, McCurtain alleged in that underlying action the following:

> [T]he top of the concrete stem wall is uneven, inclusion of an additional block on the stem wall above the plate line, holes cut into the ICF [Insulated Concrete Forms] blocks after installation, steel embeds installed out of level, steel embeds not set at the same elevation in height, concrete door headers are sagging/bowed, stem walls are bowed/crooked/out of plumb, improperly installed ICF block forms, improperly installed rebar, improper vibration of concrete during the pour, inconsistent height of the brick ledge, failure to perform a concrete slump test, failure to install all required rebar, failure to timely insert rebar and comply with contractual terms of foundation notes, failure to obtain permission from McCurtain's engineer prior to concrete pour, failure to follow and comply with all BuildBlock recommendations for construction of ICF, and failure to install and construct the ICF in a good and workmanlike manner. McCurtain also alleges that defects in workmanship by Jason Holdings, Lone Star, and Jason Contracting are

material and render the ICF "unsafe and incapable of being economically repaired."

Dkt. No. 22 at 5 (quoting Dkt. No. 34-3 at 4-5).

The allegations in the underlying action involved more than claims for negligence, however. McCurtain alleged that Lone Star engaged in intentional misconduct by filing a fraudulent *lis pendens* and lien against the property. Dkt. No. 34-3 at 10-11. McCurtain further alleged that Lone Star knew that the *lis pendens* was fraudulent and intended to cause physical, financial, or mental or emotional injury to him. *Id.* at 11. The underlying lawsuit also included allegations that representations made by Lone Star to McCurtain were knowingly fraudulent or reckless inducements meant to lure McCurtain into the contract. *Id.* at 7. Overall, McCurtain raised the following claims against Lone Star: "violations of the Texas Deceptive Trade Practices Act ('DTPA'); breach of contract; common law fraud and fraudulent inducement; misrepresentation and negligent misrepresentation; breach of express and implied warranties; negligence; filing of fraudulent lien, declaratory judgment; alter ego, agency, single business enterprise, joint enterprise, and joint venture; 'damages, expenses, and costs,' including attorney's fees; and punitive and/or exemplary damages." Dkt. No. 22 at 6; *see also* Dkt. No. 34-3 at 5-17.

After the commencement of the underlying suit, Jason Holdings, Lone Star, and Jason Contracting demanded defense and indemnity from Central Mutual pursuant to a commercial general liability policy of insurance ("the Policy") issued by Central Mutual to Jason Holdings LLC DBA Jason Contracting & Repair. *See* Dkt. No. 22 at 7, 12. Central Mutual alleges in its live pleading that it "is currently providing a defense to Jason Holdings and Jason Contracting in the Underlying Suit under a reservation of rights." *Id.* at 12.

3

Central Mutual then sued in this Court, seeking "a declaration as to its duties and obligations, if any, owed to Jason Holdings, Lone Star, and Jason Contracting under the Policy." Dkt No. 1 at 11. Specifically, Central Mutual's live pleading here seeks declaratory relief (1) establishing that Lone Star is not an insured under the Policy and is not entitled to coverage under the Policy; and (2) providing that Central Mutual has no duty to defend Jason Holdings, Lone Star, and Jason Contracting. Dkt. No. 22 at 13-17. Central Mutual furthermore requests, in the prayer of its live pleading,  a declaration that it has no duty to indemnify any party for damages awarded in the underlying suit, no duty to indemnify McCurtain for attorneys' fees incurred in the underlying suit, and recovery of its own attorneys' fees and costs related to the present suit. *Id*. at 17.

Central Mutual later moved to dismiss Lone Star as a defendant, after Lone Star filed for bankruptcy, and the Court granted the motion. *See* Dkt. Nos. 36 & 44. McCurtain also filed a Motion to Dismiss that was later mooted after a motion hearing held on August 28, 2025. Dkt. No. 23; *see also* Text Order dated August 28, 2025. Also at that hearing, the Court took under advisement Central Mutual's Motion for Summary Judgment, which is currently pending before the Court. Dkt. No. 48. Further, it was agreed at the hearing that McCurtain would file a cross-Motion for Summary Judgment, which is now also pending before the Court. Dkt. No. 49.

Thus, currently before the Court are cross-motions for summary judgment. Central Mutual's motion seeks a declaration that it has no duty to defend Jason Holdings or Jason Contracting as well as no duty to indemnify Jason Holdings, Jason Contracting, or McCurtain. Dkt. No. 34 at 21. McCurtain's motion seeks a declaration that Central Mutual has a duty to defend its insureds and a ruling that "any determination of [Central Mutual's] duty to indemnify

is not ripe." Dkt. No. 49 at 2; *see also* Dkt. No. 45 (incorporated by reference into McCurtain's Motion for Summary Judgment).

**Analysis**

For the reasons provided below, Central Mutual's Motion for Summary Judgment, Dkt. No. 34, should be **DENIED**, and McCurtain's Cross-Motion for Summary Judgment, Dkt. No. 49, should be **GRANTED**.

**A.      Familiar Standards Govern the Motions.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A fact dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co*., 58 F.3d 193, 195 (5th Cir. 1995). In carrying its burden, the nonmovant must respond to the motion by setting forth particular facts reflecting a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent summary judgment evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th

Cir. 1992). The Court views the summary judgment evidence in the light most favorable to the nonmovant. *Rosado*, 5 F.3d at 123. On summary judgment, the Court considers evidence admissible at trial or that could be presented in a form that would be admissible at a trial. *See* Fed. R. Civ. P. 56(c)(2).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. If, however, the party moving for summary judgment fails to satisfy its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

**B.    Texas Law Provides the Framework for Examining the Insurance Policy.**

All agree that Texas substantive law applies here. *See* Dkt. No. 34 at 7-9; Dkt. No. 45 at 7-9. "In Texas, insurance policies are interpreted by the same principles as contract construction." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022) (citing *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010)). More specifically:

> First, [courts] look at the language of the policy because [courts] presume parties intend what the words of their contract say. [Courts then] examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless. The policy's terms are given their ordinary and generally-accepted [sic] meaning unless the policy shows the words were meant in a technical or different sense. Courts strive to honor the parties' agreement and not remake their contract by reading additional provisions into it.

*Gilbert Tex. Constr., L.P. v. Underwriter's at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) (internal citations omitted).

A burden-shifting framework applies. "Initially, the insured has the burden of establishing coverage under the terms of the policy." *Id*. at 124 (citing *Ulico Cas. Co. v. Allied*

6

*Pilots Ass'n,* 262 S.W.3d 773, 782 (Tex. 2008)). And "[i]f the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion. If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Id.* (citations omitted).

The standard with respect to a duty to defend is favorable to an insured, as the duty is triggered if there is a basis to provide coverage for *even a portion* of the case:

> If the underlying complaint pleads facts sufficient to create the *potential* of covered liability, the insurer has a duty to defend the entire case, even if the allegations are demonstrably false, fraudulent, or groundless, and even if some of the injuries alleged are not covered or fall within the scope of an exclusion. However, if the insurer can show that *all* of the alleged liability falls outside of the scope of coverage or within the scope of an exclusion, the insurer has no duty to defend.

*City of Coll. Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 336-37 (5th Cir. 2013) (emphasis in original); *see also Gulf Mississippi Marine Corp. v. George Engine Co., Inc.*, 697 F.2d 668, 671 (5th Cir. 1983) ("For present purposes [at the summary judgment stage], it is sufficient to determine only whether some of the damages sought . . . are arguably within . . . the protection afforded [the insured] by the policy . . . .").

## C.    Texas' Eight-Corners Rule Applies.

"In determining whether an insurer's duty to defend is triggered, Texas courts strictly apply the 'eight-corners rule,' which looks only to the four corners of the most recent complaint [or petition] in the underlying action as well as the four corners of the insurance policy." *City of Coll. Station, Tex.*, 735 F.3d at 336; *see also State Farm Lloyds v. Richards*, 966 F.3d 389, 392 (5th Cir. 2020) (noting, "under Texas's well-established eight-corners rule, an insurer's 'duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy.'") (quoting *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654

7

(Tex. 2009)). In other words, the four-corners of the underlying pleadings, here the underlying state court petition, and the four-corners of the insurance policy determine whether Central Mutual has a duty to defend the Jason Defendants in the underlying state lawsuit. Courts "resolve all doubts regarding the duty to defend in favor of the [insured]." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)).

When applying the eight-corners rule, the Court consults the latest pleading in the underlying lawsuit, focusing "on the alleged facts, not on the asserted legal theories." *Id*. "[T]he duty to defend arises only when the facts alleged in the complaint, if taken as true, would *potentially* state a cause of action falling within the terms of the policy." *Id*. (citation omitted) (emphasis in original). As previously stated, doubt is resolved in the insured's favor, but "[i]f the petition *only* alleges facts excluded by the policy . . . the insurer is not required to defend." *Id*. (citation omitted) (emphasis in original).

Importantly, an insurer's duties to defend and indemnify are distinct. *See Hartford Cas. Ins. Co. v. DP Engineering, LLC*, 827 F.3d 423, 426-31 (5th Cir. 2016). While the duty to defend is based on the pleadings, the duty to indemnify is based on the facts once they are established. *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009). The duty to indemnify usually cannot be determined until after adjudication of the underlying lawsuit. *See Farmers Tex. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).

### D.    McCurtain Carries His Initial Burden to Show Potential Coverage.

McCurtain carries the initial burden by showing potential coverage under the policy. The Policy provides:

> [Central Mutual] will pay those sums that the insured becomes legally obligated
> to pay as damages because of 'bodily injury' or 'property damage' to which this

insurance applies. We will have the right and duty to defend any 'suit' seeking those damages.

Dkt. No. 34-4 at 112. The Policy defines "property damage" as follows:

**SECTION V – DEFINITIONS**

17.    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Dkt. No. 34-4 at 127.

The underlying pleadings indeed appear to allege physical injury to tangible property. *See* Dkt. No. 34-3 at 4-5; *see also* Dkt. No. 45 at 9-10 (defining physical injury). McCurtain cites authority to argue that "property damage" covers any manner of "tangible alteration" to the property. Dkt. No. 45 at 10 (citing *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 458 (5th Cir. 2022); *Julio & Sons Co. v. Continental Cas. Co.*, 692 S.W.3d 877, 772 (Tex. App.—Dallas 2024, no pet.) ("Texas courts have interpreted physical loss to require a tangible alteration or deprivation of the property.")). McCurtain furthermore explains that "[b]ecause the home and its component parts are tangible property, physical injury to that tangible property satisfies the policy's definition of 'property damage,' *regardless of whether the tangible property that was injured was the general contractor's work or some other part of the home.*" *Id.* at 11 (citing *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 10 (Tex. 2007)) (emphasis added). Thus, McCurtain explains, the Policy's affirmative grant of coverage applies to the damages alleged in the underlying suit, regardless of whether the damage was to

9

parts of the property that were the direct subject of Jason Contracting's work. *Id*. at 11-13. The Court agrees.

In *Lamar Homes*, the Texas Supreme Court analyzed an insurance policy's grant of coverage materially identical to the one at issue here. *See Lamar Homes*, 242 S.W.3d at 10. The Court held that "allegations of damage to or loss of use of the home itself may [ ] constitute 'property damage' sufficient to trigger the duty to defend under a CGL policy." *Lamar Homes*, 242 S.W.3d at 4. The Court also agreed with the proposition that "property damage" resulting from the "'unexpected, unforeseen or undesigned happening or consequence' of the insured's negligent behavior" also triggers the duty to defend under the policy. *Id*. at 16 (quoting and agreeing with *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 727 (5th Cir. 1999)).

The Court sees no reason to depart from *Lamar Homes*. Here, the underlying state court pleadings allege damage not only to defectively constructed ICF blocks but also to other parts of the building, including, for example, walls that will need to be demolished and rebuilt, which will correspondingly damage footers that will also have to be rebuilt. *See* Dkt. No. 34-3 at 4. Moreover, McCurtain correctly notes that because the pleadings indicate "there are *at least some damages* that are because of property damage, Central has a duty to defend the entire suit." Dkt. No. 45 at 23 (emphasis added); *see City of Coll. Station, Tex.*, 735 F.3d at 336 ("If the underlying complaint pleads facts sufficient to create the potential of covered liability, the insurer has a duty to defend the *entire* case, even if the allegations are demonstrably false, fraudulent, or groundless, and even if some of the injuries alleged are not covered or fall within the scope of an exclusion.") (emphasis in original).

In sum, McCurtain has made a sufficient showing of "potential" coverage sufficient to meet his initial burden. *Northfield Ins. Co.*, 363 F.3d at 528.

  **E.**  **Central Mutual Fails to Show That All Alleged Liability Is Outside the Scope of Coverage.**

Given that McCurtain has carried his initial burden, Central Mutual has no duty to defend only if it "can show that *all* of the alleged liability falls outside the scope of coverage or within the scope of an exclusion." *City of College Station, Tex.*, 735 F.3d at 336 (emphasis in original); *see also Gulf Mississippi Marine Corp. v. George Engine Co.*, 697 F.2d 668, 671 (5th Cir. 1983) ("For present purposes [of evaluating an appeal from a grant of summary judgment], it is sufficient to determine only whether some of the damages sought from [the insured] are arguably within (*i.e.*, not indisputably without) the protection afforded [the insured] by the policy issued to it by [the insurer]."). It fails to carry its burden.

Attempting unsuccessfully to carry its burden, Central Mutual concedes that while defective work can be the basis of covered "property damage," there is a distinction between defective work that "merely diminishes the value of the home without causing physical injury or loss of use" versus defective work that involves "property damage." Dkt. No. 34 at 10-12; *see also U.S. Metals, Inc. v. Liberty Mut. Group, Inc.*, 490 S.W.3d 20, 27 (Tex. 2015). But *Lamar Homes* squarely addressed this issue. It held that a materially identical policy provision triggered an insurer's duty to defend for allegations regarding defective work that caused tangible physical injury to other parts of the property. *Lamar Homes*, 242 S.W.3d at 10. As mentioned, the underlying suit alleges physical injury (*i.e.*, tangible alteration) to other parts of the property, and any doubt in that regard, moreover, must be resolved in favor of the insured. *See* Dkt. No. 34-3 at

11

4-5. Central Mutual, tellingly, barely discusses *Lamar Homes* and does not adequately explain why it wouldn't compel a result in McCurtain's favor here. *See* Dkt. Nos. 34, 47, 50.[1]

Lastly, even if the Court were to recognize the distinction between types of defective work that Central Mutual attempts to draw, Central Mutual hasn't shown that the "alleged defects do not involve property injured after construction." Dkt. No. 34 at 12. To prevail on this issue at summary judgment under the burden-shifting framework that applies, Central Mutual would need to address and resolve this disparity. It does not. Central Mutual has not shown that all damage alleged falls outside the scope of coverage. We turn next to exclusions.

**F.      Central Mutual's Resort to Policy Exclusions Falls Short.**

Because Central Mutual can't show all alleged liability falls outside the scope of coverage, it can avoid any duty to defend only by showing all alleged liability falls "within the scope of an exclusion." *City of College Station, Tex.*, 735 F.3d at 336. Seeking to do so, it invokes the "Damage to Property" and "Your Work" exclusions. Dkt. No. 34 at 12-18; *see also id.* at 4-5 (quoting Sections I(2)(j)(5) and (6) of the Policy). While Central Mutual might be correct that these exclusions apply to *some* claims, it has not shown that one or the other applies to *all* claims. Central Mutual has therefore fails to carry its burden to avoid a duty to defend.

**1.      *The "Damage to Property" exclusion doesn't necessarily apply to all claims.* The "Damage to Property" exclusion provides as follows:**

---

[1] Moreover, McCurtain's cited cases don't assist his argument. *See, e.g.*, *Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 661, 678-79 (Tex. App.—Houston [14 th Dist.] 2006, pet. denied), *abrogated by Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010) (analyzing "property damage" in the context of a duty to indemnify); *U.S. Metals, Inc. v. Liberty Mutual Group, Inc.*, 490 S.W.3d 20, 27 (Tex. 2015) (in which the Court agreed that "the best reading of the standard-form CGL policy text is that physical injury requires tangible, manifest harm and does not result merely upon the installation of a defective component in a product or system," which, resolving any doubts in favor of the insured, is precisely the case here).

**SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**2. Exclusions**

**j. Damage To Property**

"Property damage" to:

. . . .

> **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Dkt. No. 34-4 at 115.

This exclusion is limited by its language to "[t]hat particular part of real property" on which the insured or its contractors were working. Examining a materially identical provision, the Fifth Circuit held that "the plain meaning of the exclusion" is that it excludes damage "only to parts of the property that were themselves the subjects of the defective work." *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 215 (5th Cir. 2009). Central Mutual has no convincing counterargument that *all* claims for which there is otherwise coverage involve "parts of the property that were themselves the subjects of the defective work." *See* Dkt. No. 34 at 14; Dkt. No. 47 at 5-7.

Reference to the allegations, *i.e.*, the four corners of the live state court pleading, confirms the Court's conclusion. *See* Dkt. No. 34-3. In the underlying suit, McCurtain pleaded that the work was "to construct a turnkey stem wall foundation of Insulated Concrete Forms (ICF) for a home." *Id.* at 3. The work, it was alleged, was defective such that, among many other

13

things, "the walls in their entirety will need to be demolished and rebuilt. This will damage the footers, so they will need to be rebuilt, as well." *Id*. The exclusion therefore doesn't apply to portions of the property *other* than the ICF block walls. Thus, Jason Holdings damaged a portion of the property, *e.g.*, the footers, not clearly excluded by the terms of the policy. *See* Dkt. No. 45 at 15-17 (making a similar argument, with which the Court ultimately agrees).

The Fifth Circuit interpreted an insurance policy exclusion materially identical to the provision at issue here and agreed that it only applied to "'property damage to parts of a property that were themselves the subject of defective work by the insured'" but "'d[id] not bar coverage for damage to parts of a property that were the subject of only non-defective work by the insured and were damaged *as a result of defective work by the insured on other parts of the property*.'" *TIG Ins. Co. v. Woodsboro Farmers Coop.*, 117 F.4th 715, 727 (5th Cir. 2024) (emphasis added and quoting *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 215 (5th Cir. 2009)). That analysis controls here. To take just one example from the underlying pleadings here, the damage to the footers, it is alleged, occurred as a result of defective work by the insured on other parts of the property, namely the stem wall foundation, that then required destruction of the walls and concomitant damage to the footers. Dkt. No. 34-3 at 3-5.

Central Mutual responds that "the Jason Defendants' ICF Foundation work does not involve faulty construction of a 'distinct component.'" Dkt. No. 47 at 7. "The work is necessarily enmeshed with the materials provided by McCurtain and others – the footings and embed plates – in order to create one piece, a foundation to support the eventual construction of a house on top of it." *Id*. As such, the argument goes, the exclusion's language applies to those portions of the property that were connected to Jason Holdings' work. The Court is unconvinced.

14

Central Mutual's argument implicates line drawing. On one side of the line, the Fifth Circuit explained in *TIG Insurance*, are "parts of a property that were the subject of only nondefective work by the insured that were damaged as a result of defective work by the insured on other parts of the property." 117 F.4th at 727. This scenario comports with the facts of *Mid-Continent*. There, "an insured failed to seal exterior finishes and the retaining walls," which led to water damage to "interior drywall, stud framing, electrical wiring, and wood flooring." *TIG Ins.*, 117 F.4th at 727 (citing *Mid-Continent*, 557 F.3d at 217). Thus, the damage occurred to parts of the project plainly distinct from the defective work, even though the defective work caused the damage, and *even though* the drywall, stud framing, electrical wiring, and wood flooring were all parts of the same structure. *Id*.

On the other side of the line, presumably, are parts of a property indistinguishable or inseparable from parts subject to the defective work. *TIG Insurance* aligns with this latter scenario. It involved "prefabricated metal walls, roofing sheets, and other items." *Id*. The scope of work "was to assemble these pieces, including bolting together the metal walls to form rings that are attached to the roof and jacked up section by section until [an] entire silo is assembled." *Id*. The contractor "was hired to assemble the silos completely using the provided parts." *Id*. The damage, moreover, involved "defects that caused the silos to leak." *Id*. at 720. Upon inspection, it turned out there were "numerous faults with the silos' assembly, including missing or loose bolts; gaps in the tank walls and ceiling; incorrectly installed tank stiffeners; improper sealing; and unsecured roofing." *Id*.

The facts of this case are closer to those in *Mid-Continent* than *TIG Insurance*. By the Court's reading, the underlying pleadings allege that, as a result of faulty construction of the ICF foundation, there was considerable damage and loss of use for parts of the property *other than*

15

the foundation. These other parts of the property were built on top of the foundation after its installation and were not, as in *TIG Insurance*, part of a greater structure that it was Lone Star's responsibility to assemble in its entirety. *See* Dkt. No. 34-3 at 4-5 (citing issues with "wall height/elevation," concrete door headers, brick ledge, door and window openings, and more as a result of the faulty foundation). All agree that the work here involved building foundations, upon which walls would be attached. *See* Dkt. No. 34 at 2-3; Dkt No. 45 at 6-7. It was not merely assembling prefabricated wall and foundation pieces. *Id*. And any doubts on this question, moreover, must be resolved in favor of the insured. As such, the Court is guided by the facts and holding of *Mid-Continent*, with the facts of *TIG Insurance* being distinguishable. Thus, Central Mutual fails to carry its burden with respect to this exclusion, as it has not persuaded the Court that all damage otherwise covered is wholly excluded.

2.      *The "Your Work" exclusion doesn't wholly preclude coverage either*. Central Mutual's last chance for excluding coverage is the "Your Work" exclusion. The "Your Work" exclusion provides:

> **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **2. Exclusions**
>
> **l. Damage To Your Work**
>
> > "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
> >
> > This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Dkt. No. 34-4 at 116. The Policy defines "Your Work" as follows:

16

**SECTION V – DEFINITIONS**

**"Your work":**

**a.** Means:

    **(1)**    Work or operations performed by you or on your behalf; and

    **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)**    The providing of or failure to provide warnings or instructions.

Dkt. No. 34-4 at 127.

The Fifth Circuit held, in another case involving a contractor's work on a foundation, that while the "'your work' exclusion 'precludes coverage for the cost of repairing [the insured's] own work, the foundation,' . . . the exclusion did 'not exclude coverage for damage *to other property* resulting from the defective work,' such as walls and ceilings." *Feaster v. Mid-Continent Cas. Co.*, 620 F. App'x 300, 303 (5th Cir. 2015) (citing *Wilshire Ins. Co. v. RJT Const., LLC*, 581 F.3d 222 (5th Cir. 2009) (emphasis added)). Damage to other property resulting from the defective work, such as to *walls*, is precisely what is alleged here. Dkt. No. 34-3 at 4. Jason Holdings did not own or provide the property damaged, thereby precluding the exclusion's application here; for this reason, Central Mutual's counterargument on this point is inapplicable. *See* Dkt. No. 47 at 8 (citing *Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 224 (5th Cir. 2011) and *Wilshire Ins. Co.*, 581 F.3d at 226).

In any event, the Court agrees that it is at best "unclear" just how enmeshed Jason Holdings' work was with the third-party property the underlying suit alleged was damaged. *See* Dkt. No. 47 at 21. The applicable burdens and presumptions in this case—resolving the issue in favor of a duty to defend where *potential coverage* is shown and the insurer cannot show that an exclusion *indisputably* applies in full—again militate in favor of the insured on this issue. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d at 528. Moreover, because damage is alleged to have occurred to the walls, it would be premature to conclude, for present purposes, that the walls were connected to or were part of the same work on the foundation such that the "Your Work" exclusion would unambiguously relieve Central Mutual from a duty to defend. Therefore, there is at least *some* damage that isn't excluded, and the duty to defend the entire case is triggered.

Because Central Mutual failed to carry its burden by showing that the damage complained of falls outside the Policy's scope of coverage and that an exclusion indisputably applies, the Court should grant McCurtain's motion for summary judgment.  The Court agrees that the duty to defend is triggered and, moreover, that it is premature to address any duty to indemnify.[2]

### Conclusion and Recommendation

For the reasons discussed above, it is recommended that Central Mutual's Motion for Summary Judgment, Dkt. No. 34, be **DENIED**.

---

[2] In its Motion for Summary Judgment, Central Mutual includes some argument about how it is not obligated to provide coverage for "consequential damages" resulting from "property damage" alleged by McCurtain. Dkt. No. 34 at 18-19; *see also* Dkt. No. 45 at 22-24. Because the Court need not reach this issue to resolve the duty-to-defend issue, the Court declines to address it.

18

It is furthermore recommended that Daniel McCurtain's Cross-Motion for Summary Judgment, Dkt. No. 49, is hereby **GRANTED**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

**SIGNED** this 26th day of February, 2026.

_____
**RICHARD B.  FARRER**
**UNITED STATES MAGISTRATE JUDGE**